# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| KARL ARCHIBALD, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-728 |
| | ) | |
| METROPOLITAN GOVERNMENT OF | ) | Judge Campbell |
| NASHVILLE & DAVIDSON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Karl Archibald, Jr., a pretrial detainee currently held at the Davidson County Criminal Justice Center in Nashville, Tennessee, has filed a *pro se* Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (ECF No. 1). The court has granted the plaintiff's application to proceed *in forma pauperis*, and must conduct an initial screening of the complaint in accordance with the Prison Litigation Reform Act ("PLRA").

## I.       PLRA SCREENING OF CLAIMS

Under the PLRA, the courts are required to conduct an initial screening of a prisoner's civil complaint if it is filed *in forma pauperis* or if it seeks redress from a governmental entity or official, and to dismiss the complaint if it is determined to be frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A.

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure, which provides a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citations omitted). Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts underlying the claim, the plaintiff must provide sufficient allegations to give defendants

"fair notice" of the claims against them. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the claim is and the grounds upon which it rests."'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Conley*, 355 U.S. at 47))). In construing the complaint, the court must accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## II.      ANALYSIS OF CLAIMS

### A.      Allegations in the Complaint

The plaintiff here brings suit against the Metropolitan Government of Nashville and Davidson County, the Davidson County Sheriff's Office, the Metropolitan Police East Precinct, the Davidson County Public Defenders Office, and police officers Curtis Hafley, Jerry Conley, and Cheldriana Conley  (collectively, the "Law Enforcement Defendants").  The plaintiff specifically states in his complaint that his claims do not concern the conditions of his pretrial detention at the Davidson County Sheriff's Office Criminal Justice Center.  Rather, he claims that he was first detained without being questioned at the Criminal Justice Center at 6:30 or 7:00 p.m. on June 26, 2011 on a sealed indictment containing three charges of First-Degree Murder.  He claims that due to the seriousness of the charges and by law he was "suppose[d] to be questioned before booking." (Complaint, ECF No. 1, at 3.)  Next, he claims that the Public Defender's Office released information about his case to the public, thereby abusing his confidentiality.

The plaintiff also asserts claims against Fox 17 News, News Channels 2, 4, and 5, Davidson County's Face It, and Mugshot (the "Media Defendants") for "Defamation of Character, Slander, Embarrassment, Falsely accused, Misuse of criminal background, Personal Humiliation, Mental Anguish, Stress, and Emotional Distress." (ECF No. 1, at 3.)  He alleges that he was falsely accused of murder by the Media Defendants and shown as "Mugshot of the Week" by Mugshot from July 1, 2011 through July 7, 2011.

Further, the plaintiff alleges that he was falsely accused by Jerry Conley and Cheldriana Conley, and by Detective Curtis Hafley from the East Precinct, and kidnaped and falsely imprisoned.  Although his statement is difficult to understand, the plaintiff appears to be alleging that he has a valid alibi and therefore

cannot be guilty on the murder charges, and that the police officers did not properly investigate the case before arresting him.

Finally, the plaintiff appears to be seeking damages on behalf of his family for the embarrassment and mental anguish suffered by them as a result of the same actions. He seeks compensatory and declaratory relief.

### B.      The § 1983 Claims against the Law Enforcement Defendants

To bring a successful claim under 42 U.S.C. § 1983, a plaintiff must establish "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

With respect to the claims against Metro specifically, although a municipality may be a "person" for purposes of § 1983, the law is clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior*[1] theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for the deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690. "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986)).

Thus, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). In short, the plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (internal quotation

---

[1] *"Respondeat superior"* is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." Ballentine's Law Dictionary (3d ed. 1969).

marks and citations omitted). The policy or custom "must be 'the moving force of the constitutional violation'
in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk
Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *see also Bd. of Cnty. Comm'rs v. Brown*, 520
U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct" on the part of the
municipality).

In the present complaint, the plaintiff does not remotely allege the existence of any type of official
Metro policy that led to the injuries allegedly suffered by the plaintiff, or even that Metro was aware of the
actions taken by the individual police officers. Because the plaintiff has not alleged the existence of a Metro
policy that gave rise to his injuries, the § 1983 claims against Metro are subject to dismissal.

As for the claims against the Davidson County Sheriff's Office and the Metropolitan Police East
Precinct, the law is clear that neither the sheriff's office nor a police department (much less a specific precinct
within a police department) is an entity that may be sued under § 1983. *See Matthews v. Jones*, 35 F.3d
1046, 1049 (6th Cir. 1994) (noting that "the Police Department is not an entity which may be sued"); *Mathes
v. Metro. Gov't of Nashville &Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2, *3 (M.D. Tenn.
Aug. 25, 2010) (noting that "since *Matthews*, federal district courts in Tennessee have frequently and
uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit" under
Tennessee law, and therefore granting the motion to dismiss the § 1983 claim against the Davidson County
Sheriff's Office). The § 1983 claims against the Davidson County Sheriff's Office and the East Precinct are
therefore subject to dismissal for failure to state a claim upon which relief may be granted. Even if the claims
against the Sheriff's Office and the East Precinct were deemed to be stated against Metro, the plaintiff again
has not shown the existence of a policy or custom adopted by these entities that gave rise to his injuries.

The plaintiff also sues the Davidson County Public Defender's Office. A public defender's office is
likewise not a "person" within the meaning of § 1983. *Newell v. Montgomery Cnty. Public Defender's Office*,
No. Civ. A. 3 09 0440, 2009 WL 1392838, at *2 (M.D. Tenn. May 18, 2009) (citing *Matthews v. Jones*, 35 F.3d
1046, 1049 (6th Cir.1994)). Because the Public Defenders Office is not a "person" under the Act, the Court
will dismiss the § 1983 claim against it for failure to state a claim upon which relief may be granted.

Finally, the plaintiff also names three individual police officers, Jerry Conley, Cheldriana Conley, and

Detective Curtis Hafley.  These persons, acting in their individual capacity, are "persons" acting under color of state law who may be sued under § 1983.  Broadly construed, the complaint alleges that the plaintiff was falsely arrested and falsely imprisoned by these defendants, that is, that he was arrested and detained without probable cause, and that the defendants knew or should have known that he was not guilty of the crime charged.  Although it is unclear whether the plaintiff will ultimately prevail in this case, the Court finds at this stage of the proceedings, for purposes of the PLRA, that the plaintiff has stated a facially non-frivolous claim upon which relief may be granted for violation of legal rights that may be vindicated through 42 U.S.C. § 1983.

**B.      The State-Law Claims against the Law Enforcement Defendants**

To the extent the plaintiff is attempting to allege state-law claims against any of the Law Enforcement defendants, the court notes that it has supplemental jurisdiction to consider those claims when they are "so related to claims [over which the court has] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

Here, the plaintiff appears to be attempting to state a claim against "the East Precinct" for "slander with defamation of character." (Complaint at 4.)  To establish a *prima facie* case of defamation[2] under Tennessee law, the plaintiff must establish that:  (1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.  *Press, Inc., v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978).  Even under the liberal standard for reviewing a *pro se* complaint, the court finds that the plaintiff has failed to state a claim for defamation against the East Precinct.

First, it is clear that the East Precinct does not qualify as a "party" that could engage in defamation. Even construing the claim as brought against Metro instead, which is an entity capable of being sued, the plaintiff does not allege any facts suggesting how the East Precinct/Metro engaged in defamation.  While the plaintiff does allege that individual police officers out of the East Precinct falsely accused him of crimes, and falsely arrested and imprisoned him, he does not allege that the individual officers *publicly* made false

---

[2] Under Tennessee law, "[l]ibel and slander are both forms of defamation; libel being written defamation and slander being spoken defamation." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) (citation omitted).

statements about him, that is, that they "published" any statements about him outside the East Precinct. Rather, he alleges that it was the Public Defender's Office that released information about him to the public. With respect to the question of whether he has stated a claim against the Public Defender's Office for defamation, the court finds that the complaint does not allege that the information released by the Public Defender's office was false. In sum, the court finds that the allegations in the complaint have not given fair notice to any of the Law Enforcement Defendants of the facts supporting a defamation claim. To the extent the plaintiff is attempting to state a defamation claim against any defendant other than the Media Defendants, as discussed below, such claim is subject to dismissal.

As referenced above, the plaintiff further alleges that the Public Defender's Office released information about his case to the public, thereby violating his "confidentiality." (ECF No.1, at 3.) Construed broadly, the allegations appear to state a state-law claim for breach of fiduciary duty over which this court may assert supplemental jurisdiction under 28 U.S.C. § 1367(a).

C.       The Media Defendants

Although the plaintiff used a form § 1983 complaint, it is clear that he does not state a claim for violation of his civil rights against any of the Media Defendants. First, the plaintiff does not allege that the Media Defendants acted "under color of law." Second, the allegations against those defendants—primarily involving defamation—are grounded in state tort law. Thus, to the extent the plaintiff is attempting to state § 1983 claims against those defendants, those claims will be dismissed for failure to state a claim.

With respect to the state-law claims against the Media Defendants, the Court, again, has supplemental jurisdiction over these claims so long as they are "so related to claims [over which the court has] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). It appears the claims in this case—false arrest and false imprisonment claims and defamation claims arising from media reports concerning the same arrest—are closely enough related that § 1367(a) applies. *Cf. Milligan v. United States*, 644 F. Supp. 2d 1020 (M.D. Tenn. 2009) (likewise involving § 1983 claims against various law enforcement officials and Metro Nashville, and defamation claims against Sinclair Television of Nashville, Inc. (WZTV-Fox News)).

As stated above, *pro se* complaints are to be construed liberally. *Boag v. McDougall*, 454 U.S. 364,

365 (1982). Proof of defamation under Tennessee law requires the plaintiff to show that: (1) a defendant published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Press, Inc., v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978). The plaintiff has alleged that the Media Defendants falsely accused him of murder, giving rise to an inference that they published such information by broadcasting news stories, and also alleges facts from which it could be inferred that the defendants were reckless or negligent in failing to ascertain the truth of the statements before making them. The court finds, for purposes of the PLRA screening requirement, that the plaintiff has adequately alleged facts sufficient to give the defendants "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

### D.      Claims on Behalf of Plaintiff's Family

To the extent the plaintiff seeks to bring claims on behalf of his family for his family's "suffering, pain, stress, and emotional distraught [sic], embarrassment, and mental anguish" resulting from the defendants' alleged wrongful actions (Complaint at 5), those claims will be dismissed for lack of standing. The plaintiff cannot bring claims for damages suffered by someone other than himself.

## III.      CONCLUSION

The Court finds, for the reasons set forth herein, that the plaintiff has failed to state a claim under § 1983 against the Metropolitan Government of Nashville and Davidson County, the Davidson County Sheriff's Office, the Metropolitan Police East Precinct, or the Davidson County Public Defender's Office, or against any of the Media Defendants. The § 1983 claim against those defendants will therefore be dismissed. The plaintiff, however, has stated a colorable claim under § 1983 against defendants Curtis Hafley, Jerry Conley, and Cheldriana Conley which will be permitted to proceed.

In addition, although the plaintiff has failed to state a claim for defamation against any of the Law Enforcement Defendants, the Court finds that the plaintiff has stated defamation claims that are not facially frivolous against the Media Defendants. He has also stated a potentially cognizable claim against the Public Defender's Office for breach of fiduciary duty. Those claims too will be permitted to proceed.

The plaintiff lacks standing to assert damages claims on behalf of his family members. His claims for

damages allegedly caused by the defendants to any person other than himself are likewise subject to dismissal.

An appropriate order will enter.


_____
Todd Campbell
United States District Judge